UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| STUART COSGRIFF,<br><br>Plaintiff,<br><br>-against-<br><br>VALDESE WEAVERS LLC,<br><br>Defendant. | Case No.: 1:09-cv-05234-(KW) (MHD) |

---

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF
PLAINTIFF'S INDEPENDENT CONTRACTOR STATUS**

---

927712

**TABLE OF  CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ...................................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 3

STANDARD OF LAW ............................................................................................................. 4

PROCEDURAL HISTORY ....................................................................................................... 5

ARGUMENT ........................................................................................................................... 6

CONCLUSION ...................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

<u>Allen v Coughlin</u>, 64 F.3d 77, 80 (2d Cir. 1995).............................................................. 4

<u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986)......................... 5

<u>Anyan v. New York Life Ins. Co</u>., 192 F.Supp.2d 228, 238-39 (S.D.N.Y.2002)......................... 19

<u>Aymes v. Bonelli</u>, 980 F.2d 857, 861, 863 (2d Cir.1992) ............................................. 9, 16, 17, 21

<u>Banks v. Correctional Services Corp</u>., 475 F.Supp.2d 189, 198 (E.D.N.Y. 2007)......................... 5

<u>Barnhart v. New York Life Ins. Co</u>., 141 F.3d 1310, 1313 (9th Cir.1998) ................................... 23

<u>Bates Advertising USA, Inc. v. McGregor</u>, 282 F.Supp.2d 209 (S.D.N.Y. 2003) ......................... 7

<u>Bernstein v. Seeman</u>, 593 F.Supp.2d 631, 634 (S.D.N.Y.2009)............................................... 5

<u>Brock v. Superior Care, Inc</u>., 840 F.2d 1054, 1059 (2d Cir.1988) ................................................ 5

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, (1986) ...................................................... 4

<u>Clesi v. Zinc Corp. of Am</u>., 2001 WL 1223456 at * 3 (N.D.N.Y. 2001) ..................................... 10

<u>Community for Creative Non-Violence v. Reid</u>, 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811

    (1989)................................................................................................................ passim

<u>Eisenberg v. Advance Relocation & Storage, Inc</u>., 237 F.3d 111, 114 (2d Cir.2000)........... passim

<u>Frankel v. Bally, Inc</u>., 1994 WL 409461 at *1 (S.D.N.Y. 1994)........................................ 8, 10, 25

<u>Gant v. Wallingford Board of Educ</u>., 195 F.3d 134, 144 (2d Cir. 1999)....................................... 5

<u>Greenfield v. Philles Records</u>, 98 N.Y.2d 562, 569 (2002) ......................................................... 7

<u>Harrington v. Potter</u>, 2010 U.S. Dist. Lexis 52738, *8 (N.D.N.Y. May 28, 2010) ........................ 9

<u>Lane v. David P. Jacobsen & Co</u>., 880 F.Supp. 1091, 1099 (E.D.Va.1995) ................................ 14

<u>Langman Fabrics v. Graff Californiawear, Inc</u>., 160 F.3d 106, 110-111 (2d Cir.1998)................. 9

<u>Miele v. Equitable Life Assur. Co</u>., Not Reported, 2002 WL 484841 at *5 (S.D.N.Y.)................ 7

O'Dell v. Eggensperger, No. 95-3950, slip op. at 2,

1998 WL 29644 (S.D.N.Y. Dec. 13, 1996) ............................................................. 8,16

Roginsky v. County of Suffolk, N.Y., 2010 WL 3082503 (E.D.N.Y.) ........................................ 9

Rohn Padmore, Inc. v. LC Play Inc., 679 F.Supp.2d 454 (S.D.N.Y. 2010.................................... 8

Saffire Corp. v. Newkidco, LLC 286 F.Supp.2d 302, 309 (S.D.N.Y. 2003)................................. 7

Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan,

7 F.3d 1091, 1094 (2d Cir. 1993).................................................................................. 7

Slamow v. Del Col, 174 A.D.2d 725, 726 (2d Dep't 1991), aff'd., 79 N.Y.2d 1016 (1992).......... 7

Slatt v. Slatt, 64 N.Y.2d 966, 967, rearg. denied 65 N.Y.2d 785 (1985)...................................... 7

Speen v. Crown Clothing Corp., 102 F.3d at 633 (1st Cir. 1996) ......................................... 15, 18

Stetka v. Hunt Real Estate Corp., 859 F. Supp. 661, 667 (W.D.N.Y. 1994)............................... 10

Tagare v. NYNEX Network Sys. Co., 994 F. Supp. 149, 156-157 ..................................... passim

Tuohy v. Bally, Inc., No. 95-1499, 1997 WL 66784, at *4 (S.D.N.Y. Feb. 14, 1997) ......... passim

W.W.W. Assoc. v. Giancontieri, 77 N.Y.2d 157 (1990).................................................. 7

Weary v. Cochran, 377 F.3d 522, 527(6th Cir 2004) .................................................. 18

Williams v. CF Medical, Inc., 2009 WL 577760 (N.D.N.Y. 2009) ..................................... passim

Zahler v. Twin City Fire Ins. Co., Not Reported, 2006 WL 846352 (S.D.N.Y.) .......................... 7

**Statutes**
New York City Administrative Code § 8-107 ............................................................... 1

**Rules**
Federal Rule of Civil Procedure 56 ......................................................................... 1, 4

## PRELIMINARY STATEMENT

Defendant Valdese Weavers LLC ("Valdese" or the "Company") submits this memorandum of law in support of its motion for summary judgment against Plaintiff Stuart Cosgriff ("Cosgriff" or "Plaintiff"), pursuant to Federal Rule of Civil Procedure 56. Pursuant to the Order of this Court dated February 24, 2011, Defendant limits this brief to the single issue of whether Plaintiff, through his corporation Highland Fabrics, Inc. ("Highland"), was an independent contractor for Valdese.

This action was instituted by Plaintiff alleging that Valdese violated his rights under the New York City Administrative Code § 8-107 ("NYCAC").[1] Despite the extensive discovery undertaken in this matter and the resulting large amount of factual information now available, there are simply no facts supporting Cosgriff's claim that he was an employee of Valdese.

## BACKGROUND

Cosgriff, owner of Highland and its predecessor agency Cosgriff Associates, sold fabric in New York as an independent contractor for approximately twenty (20) years before representing Valdese.[2] Cosgriff began working for one of Valdese's former competitors, Mastercraft Fabrics, in the textile industry in 1972.[3] From approximately 1972 to 1977, Cosgriff was an employee of Mastercraft working in its North Carolina office, at which point, Cosgriff moved to New York and began working in sales for Mastercraft.[4] Cosgriff incorporated a sales agency in New York called "Cosgriff Associates" in or around 1978.[5] After the incorporation of Cosgriff Associates, Cosgriff admits that he was not an employee, but was an independent

---

[1] See, Exhibit "2" to the Declaration of Joan M. Gilbride on Summary Judgment dated March 14, 2011 (hereinafter "Gilbride SJ Dec.").
[2] These facts are not in dispute. See Appendix "A," which pursuant to the Court's February 24, 2011 Order, contains a separate brief discussing the facts that are not in dispute, the facts that are in dispute, if any, and addresses the materiality of the disputed facts.
[3] (Gilbride Dec., Ex. "C," S.C. Dep. Tr., Vol. 1, at p 14:8).
[4] (Gilbride Dec., Ex. "C," S.C. Dep. Tr., Vol. 1 at p. 16: 19-25; 17:1-5).
[5] (Gilbride Dec., Ex. "C," S.C. Dep. Tr., Vol. 1, at p. 17:6-17).

representative of Mastercraft. [6]

Highland Fabrics, incorporated in 1992, is the successor to Cosgriff Associates and continued Cosgriff Associates' representation of Mastercraft.  Valdese played no role in incorporating Highland Fabrics.[7]  Prior to his relationship with Valdese, Cosgriff had owned an independent sales agency in New York since the late 1970's.  This was the way that Cosgriff chose to do business.

Valdese has a long history of selling fabric through independent contractors.  Since the 1940's, Valdese has used independent sales agencies including McFarland and Son, Latham & Associates, FLF Sales and TK Textiles, to represent its fabrics to customers in its Northeast Territory.[8]  Valdese also utilizes independent sales representatives in several different sales territories to market its product line.  Currently, Valdese has independent sales representatives in several U.S. territories including California, Michigan, New York, and Mississippi.[9]  These sales agencies, like Highland Fabrics, work independently using their expertise to generate sales for Valdese.[10]

Viewed in this context, Cosgriff's background as a textile salesman, Highland's establishment as an independent sales agency, and Valdese's long tradition of using independent sales representation to sell its product line, it is indisputable that the parties intended Cosgriff to serve as an independent contractor during Highland's representation of Valdese.  Moreover, the evidence does not support the existence of an employee relationship, but does establish the existence of an independent contractor agent relationship between the parties.  Any attempt to characterize the relationship between the parties otherwise is, at best, an attempt at revisionist

---

[6] (Gilbride Dec., Ex. "C," S.C. Dep. Tr., Vol. 1, at p. 90:3-7; 146:1-5).
[7] (Gilbride Dec., Ex. "C," S.C. Dep. Tr., Vol. 1, at p. 14:17-19, 18:13-23 and p. 36:11-14).
[8] Declaration of Snyder Garrison dated January 24, 2011 at ¶ 3 (hereinafter "Garrison Dec.").
[9] (Gilbride Dec., Ex. "A," S.G. Dep. Tr. at p. 37:15-25; 38:1-6).
[10] (Garrison Dec. at ¶ 3).

history.

## **STATEMENT OF FACTS**[11]

In April 2001, Valdese entered into an Independent Sales Representative Agreement (the "ISR Agreement") with a New York based sales agency, Highland, to represent Valdese in its Northeast Sales Territory.[12] The contract expressly sets forth that Plaintiff is an independent contractor.[13]

Cosgriff had been a fabric salesman for over twenty (20) years in the Northeastern United States before representing Defendant's line.[14] Accordingly, Cosgriff knew the textile industry in New York, and how to sell fabric. Plaintiff sold fabric for Valdese from 2001 through 2008 when his contract was terminated.[15] Cosgriff's company, Highland, was paid on straight commissions for the sales services, and neither Cosgriff or any of the employees of Highland were ever paid a salary from Valdese.[16] Payments to Highland were reported on IRS Form 1099s.[17] Plaintiff did not receive health or life insurance from Defendant.[18] Plaintiff filed corporate tax returns for Highland Fabrics and took numerous tax deductions relating to his company expenses.[19]

Highland was responsible for the expenses related to Cosgriff's and the other Highland's employees as sales representatives including their, *inter alia*, car, computer, overhead, pencils,

---

[11] The facts set forth in the "Statement of Facts" are not in dispute. See, Appendix "A."

[12] The Independent Sales Representative Agreement provides that the ISR Agreement was entered into "as of the 5th day of April 2000;" however, there is no dispute that April 2000 is typographical error, and the Agreement was signed in April 2001. (S.C. Dep. Tr. at p. 89:1-9)

[13] (Gilbride Dec., Ex., "H" at ¶ 14).

[14] (Gilbride Dec., Ex. "C," S.C. Dep. Tr., Vol. 1, at p 14:8).

[15] (Gilbride Dec., Ex. "C," S.C. Dep. Tr., Vol. 1, at p. 83:3-10; Gilbride Dec., Ex. "H," ISR Agreement; Gilbride Dec., Ex. "Q").

[16] (Gilbride Dec., Ex. "C," S.C. Dep. Tr., Vol. 1, at p. 92:3-16; Gilbride Dec., Ex. "E," N.N. Dep. Tr. at p.57: 2-4, Gilbride Dec., Ex. "I," IRS Form 1099s).

[17] Id.

[18] (Gilbride Dec., Ex. "C," S.C. Dep. Tr., Vol. 1, Tr. at p. 22:14-25; 120:16-20;148: 6-13, Gilbride Dec., Ex. "K," Gilbride Dec., Ex. "E," N.N. Dep. Tr. at p. 57:12-16).

[19] (Gilbride Dec., Ex. "D," S.C. Dep. Tr., Vol. 2, at pp. 128-35, Gilbride Dec., Ex. "L").

3

pens, utilities, and phone.[20]

Cosgriff had control over his day to day activities such as scheduling clients, and determining which products to sell to customers.[21]  Plaintiff represented another company, Bomar Trimming, during his representation of Valdese.[22]  Additionally, Cosgriff wife's interior design company, Summa Interiors, operated out of the same corporation, Highland.[23]  Based on these undisputed facts, Cosgriff was an independent contractor for Valdese, and Defendant is entitled to judgment as a matter of law.

## STANDARD OF LAW

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the absence of any genuine issue of material fact, which may be met either by affirmative evidence or by pointing to a lack of evidence pertaining to an essential element of the non-moving party's claim.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, (1986).  When the moving party has set forth facts showing that the non-movant's claims cannot be sustained, the opposing party "may not rest upon the mere allegations . . . in its pleading, but its response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Allen v Coughlin, 64 F.3d 77, 80 (2d Cir. 1995).

The Second Circuit Court of Appeals has held that "while we draw all reasonable inferences in favor of the non-moving party on a motion for summary judgment, we do not

---

[20] (Gilbride Dec., Ex. "D," S.C. Dep. Tr. Vol. 2 at p. 133:15-25; 134: 1-8(car) (Gilbride Dec., Ex. "C," S.C. Dep., Vol. 1, Tr. at p. 120:16-20 (computer) (Gilbride SJ Dec., Ex. "5," S.C. Dep. Tr., Vol. 1, at pp. 115 and 142 (overhead, pens/pencils))(Gilbride Dec., Ex. "L," "Highland tax return deductions" (phone and utilities)).

[21]  (Gilbride SJ Dec., Ex., "5" S.C. Dep. Tr., Vol. 1 at pp. 121-122, 136).
[22]  (Gilbride Dec., Ex. "A," S.C. Dep. Tr. Vol. 1 at p 59:11-22).
[23]  (Gilbride Dec., Ex. "C," S.C. Dep. Tr., Vol. 1, at p. 20:22-25 – 22:13).

permit an issue to go to trial on the basis of mere speculation in favor of the party that bears the burden of proof." <u>Gant v. Wallingford Board of Educ.</u>, 195 F.3d 134, 144 (2d Cir. 1999). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

The determination of whether a plaintiff is an employee or an independent contractor is a question of law.  See, <u>Brock v. Superior Care, Inc.</u>, 840 F.2d 1054, 1059 (2d Cir. 1988).  The independent contractor issue is appropriately addressed on summary judgment.  <u>Bernstein v. Seeman</u>, 593 F.Supp.2d 631, 634 (S.D.N.Y. 2009) (determining employment status "requires the presentation of additional facts to the Court, and defendant's motion to dismiss is not the appropriate stage at which to resolve such matter"); <u>Banks v. Correctional Services Corp.</u>, 475 F.Supp.2d 189, 198 (E.D.N.Y. 2007)(argument that plaintiff was independent contractor is more appropriately made in a motion for summary judgment).

Applying the above standards to the instant case, Cosgriff is unable to raise a material issue of fact to dispute that he was an independent contractor with Valdese and summary judgment should be granted.

## <u>PROCEDURAL HISTORY</u>

Cosgriff initiated this action by serving and filing a Complaint in the present action on or about May 5, 2009.[24] [25]  Defendant served and filed an Answer to Plaintiff's Complaint on June

---

[24] (Gilbride SJ Dec., Ex. "2").

[25] Valdese instituted a related action in North Carolina state court entitled "Valdese Weavers LLC v. Highland Fabrics, Inc. and Stuart Cosgriff," seeking a declaration of rights under the Independent Sales Representative Agreement to resolve the issue of Highland/Cosgriff's employment status.  Cosgriff, as defendant in the declaratory judgment action, removed Valdese's Complaint to the United States District Court for the Western District of North Carolina (W.D.N.C Case No. 09cv170).  There has been no decision by the Western District of North Carolina.  By Order dated December 2, 2009, the North Carolina action has been stayed pending the resolution of the instant litigation. (Gilbride SJ Dec., Ex., "4").

11, 2009.[26]  The parties have exchanged voluminous documents and conducted three (3) party depositions and four (4) non-party depositions.

## ARGUMENT

## PLAINTIFF WAS AN INDEPENDENT CONTRACTOR FOR VALDESE

It is indisputable that Cosgriff was an independent contractor because: (1) Cosgriff entered into a written agreement to work as an independent contractor; (2) the balance of the <u>Reid</u> factors strongly reflects his independent status; and (3) courts have consistently found independent contractor relationships under similar circumstances.

A.    The Independent Sales Representative Agreement

It is undisputed that Valdese and Highland/Cosgriff entered into an Independent Sales Representative Agreement (the "ISR Agreement") detailing the nature of their relationship as that of company-independent contractor, and not employer-employee.  The parties expressly agreed that Highland Fabrics/Cosgriff's relationship with Valdese would be that of an independent contractor. Paragraph 14 of the ISR Agreement provides as follows:

> **The Company [Valdese] and the Representative [Highland Fabrics/Cosgriff] intend that the relation of the Representative to the Company is that of an independent contractor.** Neither the Representative nor any agent, employee, or servant of the Representative shall be deemed to be the employee, agent, or servant of the Company. The Representative shall be solely and entirely responsible for his acts and for the acts of his employees, agents, and servants during the performance of the sales representation herein provided for. The Representative shall indemnify the Company against all loss, liability, and cost, including attorneys' fees, growing out of claims or actions based upon or arising out of any damage or injury, including death, to persons or property or any economic loss caused by or sustained in connection with the sales representation provided herein. (Gilbride Dec., Ex. "H," at ¶ 14)(emphasis added).

---

[26] (Gilbride SJ Dec., Ex. "3").

6

Cosgriff admitted that at the entered into the ISR Agreement, he understood that he was an independent representative as he had been with Mastercraft.[27]

In addition to clearly setting forth the parties' intention that Highland's relationship to Valdese would be that of an independent contractor, the provisions set forth in the ISR Agreement create an independent contractor relationship between the parties.   For example, Highland/Cosgriff was: (1) to be paid on commissions; (2) to use its judgment and discretion in sales; (3) to hire its own personnel; and (4) to pay for its own expenses.[28]   Notably, there is no covenant not to compete in the ISR Agreement.

The fundamental principle of contract interpretation under New York law is that contracts are construed according to the intent of the parties.   Zahler v. Twin City Fire Ins. Co., Not Reported, 2006 WL 846352 (S.D.N.Y) citing Greenfield v. Philles Records, 98 N.Y.2d 562, 569 (2002)(citing Slatt v. Slatt, 64 N.Y.2d 966, 967, rearg. denied 65 N.Y.2d 785 (1985). The primary objective in contract interpretation "is to give effect to the intent of the contracting parties 'as revealed by the language they chose to use'." Bates Advertising USA, Inc. v. McGregor, 282 F.Supp.2d 209 (S.D.N.Y. 2003) quoting Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1094 (2d Cir. 1993)(citation omitted).   The terms of an agreement are to be interpreted in accordance with their plain meaning.   Saffire Corp. v. Newkidco, LLC 286 F.Supp.2d 302, 309 (S.D.N.Y. 2003).   The court is to give ". . . practical interpretation to the language employed and the parties' reasonable expectations." Slamow v. Del Col., 174 A.D.2d 725, 726 (2d Dep't 1991), aff'd., 79 N.Y.2d 1016 (1992).   A clear and complete written agreement should be enforced in accordance with its terms. Miele v. Equitable Life Assur. Co., Not Reported, 2002 WL 484841 at *5 (S.D.N.Y) citing W.W.W. Assoc. v.

---

[27] (Gilbride Dec. Ex. "C," S.C. Dep. Tr., Vol. 1, at p. 145-146: 1-9).
[28] (Gilbride Dec., Ex. "H," at ¶¶ 6, 11, 12, and 14).

Giancontieri, 77 N.Y.2d 157 (1990).

Courts in the Second Circuit have considered contractual language as one factor in determining employment status.  *See,* Tuohy v. Bally, Inc., 1997 WL 66784, at *4 (S.D.N.Y. Feb. 14, 1997). O'Dell v. Eggensperger, No. 95-3950, slip op. at 2, 1998 WL 29644 (S.D.N.Y. Dec. 13, 1996; Frankel v. Bally, 1994 WL 409461, at *1 (S.D.N.Y. Apr. 11, 1994).  Thus, the parties' intention, confirmed in a written agreement is a significant fact, and cannot be ignored in analyzing Plaintiff's employment status with Valdese. The ISR Agreement, negotiated freely between the parties, strongly supports Valdese's position that Plaintiff was an independent contractor.[29]

B.    The Reid Factors

In Community for Creative Non-Violence v. Reid, 490 U.S. 730 (1989), the United States Supreme Court set forth several factors in order to guide a court's determination concerning whether an individual is an "independent contractor" or an "employee."  The so-called "Reid factors" as analyzed by the Second Circuit in Eisenberg v. Advance Relocation & Storage, Inc., 237 F.3d 111, 114 (2d Cir.2000) (citing Reid, *supra*) are as follows:

> [1] the hiring party's right to control the manner and means by which the product is accomplished ... [;][2] the skill required; [3] the source of the instrumentalities and tools; [4] the location of the work; [5] the duration of the relationship between the parties; [6] whether the hiring party has the right to assign additional projects to the hired party; [7] the extent of the hired party's discretion over when and how long to work; [8] the method of payment; [9] the hired party's role in hiring and paying assistants; [10] whether the work is part of the regular business of the hiring party; [11] whether the hiring party is in business; [12] the provision of employee benefits; and [13] the tax treatment of the hired party.[30]
> The balancing of the Reid factors is a question of law; although each Reid factor may

---

[29] (Gilbride SJ Dec. Ex., "5," S.C. Dep. Tr., Vol. 1 at pp. 78-82).

[30] The Reid factors have been used to analyze an employee's employment status in matters arising under the New York State and New York City Human Rights Laws.  Tagare v. Nynex Netowrk Systems Co., 994 F.Supp. 149, 159 (S.D.N.Y. 1997); Rohn Padmore, Inc. v. LC Play Inc., 679 F.Supp.2d 454 (S.D.N.Y. 2010).

require a factual determination.  See, Roginsky v. County of Suffolk, N.Y., 2010 WL 3082503 (E.D.N.Y.), citing Harrington v. Potter, 2010 U.S. Dist. Lexis 52738, *8 (N.D.N.Y. May 28, 2010).  In the instant matter, there is no triable issue of fact regarding the impact of the analysis of the Reid factors.

Balancing all of the Reid factors, giving appropriate weight to each, it is clear that Plaintiff was an independent contractor.  As discussed by the Second Circuit in Eisenberg, in balancing the Reid factors, a court must disregard those factors that "are (1) irrelevant or (2) of 'indeterminate' weight, that is, those factors that are essentially in equipoise and thus do not meaningfully cut in favor of either the conclusion that the worker is an employee or the conclusion that he or she is an independent contractor." Eisenberg at p. 114. citing Aymes v. Bonelli, 980 F.2d 857, 861, 863 (2d Cir. 1992) see also Langman Fabrics v. Graff Californiawear, Inc., 160 F.3d 106, 110-111 (2d Cir. 1998)("Not all the Reid factors will be significant in every case, and we must weigh in the balance only those factors that are actually indicative of agency in the particular circumstances before us").

Under the present circumstances, the following factors are highly relevant and should be given more weight in the Court's analysis of the Reid factors: (1) Cosgriff's discretion, and Valdese's lack of control, over his work (Reid Factor No. 1); (2) the skill required to sell fabric (Reid Factor No. 2); (3) the parties' financial treatment of the relationship (Reid Factor No. 8 [method of payment]; Reid Factor No. 13 [tax treatment]; Reid Factor No. 12 [provision of benefits]), and (4) the source of the tools for the work (Reid Factor No. 3).  The undisputed facts concerning these highly relevant factors are dispositive, and show that Cosgriff was an independent contractor for Valdese.

In addition to the above factors, the location of the work (Reid Factor No. 4), and

9

Cosgriff's ability to hire assistants (<u>Reid</u> Factor No. 9) are meaningful in the analysis of Cosgriff's independent contractor status, however, these two factors carry less weight in relation to the aforementioned factors.[31]   The <u>Reid</u> factors are addressed below in the order of their significance to Cosgriff's status.

1.   **<u>Reid Factor No. 1</u>:** *Valdese did not have the right to control the manner and means by which Cosgriff accomplished his work*

Cosgriff retained control, independence and discretion in his work.  In analyzing the first <u>Reid</u> factor, courts evaluate a company's day-to-day involvement in the individual's work. The Supreme Court, Second Circuit and District Courts in this Circuit analyzing the control factor emphasize the extent of the hiring party's control over the hired party's daily activities. See, <u>Eisenberg</u>, *supra*. See also, <u>Tagare v. NYNEX Network Sys. Co.</u>, 994 F. Supp. 149, 156-157 citing <u>Reid</u>, <u>Stetka v. Hunt Real Estate Corp.</u>, 859 F. Supp. 661, 667 (W.D.N.Y. 1994), <u>Frankel v. Bally, Inc.</u>, supra, at *1.  <u>Tuohy v. Bally, Inc.</u>, 1994 WL 409461 at *4.  The control inquiry is one of degree, as "[s]ome control by the employer over the [hired] party remains consistent with a finding that the [hired] party is an independent contractor."  <u>Clesi v. Zinc Corp. of Am.</u>, 2001 WL 1223456 at * 3 (N.D.N.Y. 2001) (*citing* <u>Reid</u>, 490 U.S. at 752).

<u>Eisenberg</u> provides an example of the degree of employer control that suggests an employer-employee relationship.  In <u>Einsenberg</u>, a female warehouse worker brought action against a storage warehouse company alleging discrimination under Title VII and the NYHRL. <u>Eisenburg</u>, *supra*, at 112.  In evaluating the first <u>Reid</u> factor, the <u>Eisenberg</u> Court found that this factor weighed in favor of employee status because the defendant in that case gave the plaintiff "orders" on a daily basis at a warehouse location; if the defendant was not going to be at the

---

[31] The remaining <u>Reid</u> factors--factors five, six, seven, ten and eleven--weigh in favor of holding that Cosgriff was an independent contractor; however, they are irrelevant and/or insignificant, and therefore, carry little weight in the analysis.

warehouse on a particular day, the defendant told plaintiff on the prior day "where ... to go and what ... to do."  Id. at 118. Moreover, at job sites, one of the defendant's representatives "would direct the crew as to what objects each [crew member, including Eisenberg] was to move."  Id.

There is no evidence here of the kind of daily control of Plaintiff's activities as found by the Second Circuit in Eisenberg. Cosgriff fails to provide any evidence of "anything approximating daily supervision" and has "significant discretion over when, where and how long to work, therefore possessing "substantially more authority and independence than an traditional employee."  See, Tagare at 157.

With regard to Cosgriff's day-to-day activities, Cosgriff testified that his time while representing Valdese was divided approximately into thirds; he would go to the office, visit a customer, or travel to North Carolina.[32] [33]   Significantly, when asked whose choice it was to split his time that way, Cosgriff testified, "Experience. Me…"[34]  Furthermore, when asked if anyone from Valdese requested that he travel to North Carolina with frequency, Cosgriff testified, "No. My experience in the industry said that the more time you're there [the mill] walking through with the designers…the more…we got out of it."[35]

Cosgriff testified that in deciding on which customers to visit on a daily basis he could suggest how to get "something going."[36] [37]  When describing a sales call, Cosgriff testified that [Highland] would "like to have North Carolina people involved as designers or whatever, but it wasn't the only way *I* did it."[38]  The above testimony reflects that Cosgriff relied on his own experience and salesmanship and controlled his day-to-day activities.

---

[32] Valdese assumes, for purposes of this motion only, that Cosgriff's estimation of the division of his time is reasonable.  Valdese does not dispute that Cosgriff determined how to allocate his time.
[33] (Gilbride SJ Dec., Ex., "5" S.C. Dep. Tr., Vol. 1 at pp. 121-122).
[34] (Id. at 136).
[35] (Id. at pp. 129-130).
[36] (Id. at p. 140).
[37] See also, the Declaration of Zack Taylor dated January 27, 2011 at ¶ 6 (hereinafter "Taylor Dec.").
[38] (Gilbride SJ Dec., Ex., "5" S.C. Dep. Tr., Vol. 1 at pp. 121-122)(emphasis added).

In further support of the fact that Cosgriff retained day-to-day control, it is undisputed that Valdese did not tell Cosgriff what time to be in the office.[39]  Valdese did not set a "start" or "end" time to Cosgriff's workday or workweek, nor did Cosgriff have to report his hours to Valdese.[40]

As further evidence of its independence, Cosgriff admitted that Highland represented Bomar Trimming for a period while it simultaneously represented Valdese.  Bomar is not affiliated with Valdese.[41]  Cosgriff testified that he did not want to represent other manufacturers.[42]  Additionally, Neil Nahoum, who worked for Highland Fabrics when it represented Valdese, and is the current sales representative for Valdese, represented other fabric lines while with Highland and currently represents other fabric lines.[43]  The opportunity to work for an unaffiliated company is another factor that demonstrates Highland/Cosgriff's independence.

In addition to Cosgriff's own testimony, Valdese's Senior Vice President of Sales and Marketing, Zack Taylor, confirms the independence of Valdese's sales representatives, including Highland.  According to Valdese senior sales management, Valdese relies on the sales expertise of it sales representation in various territories.  Highland was responsible for developing selling opportunities in the Northeast Territory.[44]  Highland worked with Valdese's customers to determine customer needs.[45]  When Valdese executives traveled to the Northeast Territory, Highland Fabrics would select appointments for executives to attend based on Cosgriff's, or his

---

[39] (Gilbride Dec., Ex. "C," S.C. Dep. Tr. at p. 139:13-25, 140: 1-13; Gilbride Dec., Ex. "A," S.G. Dep. Tr. at 43:24-25; 44:1-2).
[40] (Taylor Dec. ¶ 6).
[41] (Gilbride SJ Dec., Ex. "5," S.C. Dep. Tr. Vol. 1 at p. 62).
[42] (Gilbride Dec., Ex. "C," S.C. Dep. Tr. Vol. 1 at p. 59:11-22 and Gilbride Dec., Ex. "D," S.C. Dep. Tr., Vol. 2, at p. 165:1-5).
[43] (Gilbride Dec., Ex. "C," S.C. Dep. Tr., Vol. 1, at p. 65:12-25; Gilbride Dec., Ex. "E," N.N. Dep. Tr. at p. 97: 8-23).
[44] (Taylor Dec. ¶ 11).
[45] Id.

associates', knowledge of selling opportunities and needs of each customer.[46]

In addition to finding selling opportunities, Valdese's independent sales representatives make numerous decisions regarding customer sales requests prior to Valdese's receipt of the order including, but not limited to, the merchandise to sell to a customer, how the merchandise was sold, and how to manage the exclusivity of merchandise within the territory.[47]   It is undisputed that it was within Highland's discretion to determine which  representative would call on specific Valdese client accounts.[48]   Moreover, Highland did not have to meet sales quotas.[49]

While Cosgriff makes a conclusory statement that he was subjected to Valdese's rules and regulations, it is undisputed that  Cosgriff was not subject to the following Valdese policies, rules and procedures: (1) Vacation & Holiday Policy; (2) Travel Policy, which defines what travel expenses will be reimbursed by Valdese; (3) Leave of Absence Policy, which outlines procedures for employee absences such as FMLA or personal leave; (4) Attendance Policy; (5) Progressive Discipline Policy; (6) Pre-employment Mandatory Drug Screening or Random Drug Testing; (7) Employee Assistance Program; or the (8) Computer Usage and E-Mail Policy.[50] The fact that Cosgriff was not required to comply with the policies issued to Valdese employees demonstrates that Cosgriff was an independent contractor.

The undisputed facts demonstrate that the first <u>Reid</u> factor weighs strongly in favor of holding that Valdese and Highland/Cosgriff had an independent contractor relationship.

**2.      Reid Factor No. 2:** *Cosgriff had required skills to sell fabric before joining Valdese*

The level of skill required, the second <u>Reid</u> factor, also weighs heavily in favor of a finding that Plaintiff was an independent contractor.   Where a position requires "specialized

---

[46] <u>Id</u>.
[47] (Taylor Dec. at ¶15).
[48] (Gilbride Dec., Ex. "E," N.N. Dep. Tr. at pp. 56:22-25; 57:1 and 66-68:6; Taylor Dec. ¶ 6).
[49] Id.
[50] (Taylor Dec. ¶ 5).

skills of the sort typically acquired through experience and/or education[,]" the hired party is more likely deemed an independent contractor rather than an employee. *See,* Eisenberg at 118 (emphasis omitted).  Moreover, the skills required of a sales person are often specialized. See, Williams v. CF Medical, Inc., 2009 WL 577760 (N.D.N.Y. 2009) at *6 citing Lane v. David P. Jacobsen & Co., 880 F.Supp. 1091, 1099 (E.D.Va.1995).

It is undisputed that Cosgriff obtained a degree in marketing.[51]   It is also undisputed that Cosgriff had owned a sales agency Highland Fabrics (and its predecessor Cosgriff Associates), in the Northeast Territory for over twenty (20) years before entering into the ISR Agreement with Valdese Weavers.[52]  There is a historic customer base in the Northeast for fabric companies selling to distributors and decorative jobbers, including companies such as Ethan Allen, Kravet, Robert Allen, Duralee, Schumacher, Stroheim and Roman.[53]  Cosgriff developed relationships and sold fabric to essentially the same customers during his representation of Mastercraft and Valdese. This extensive experience demonstrates that Highland Fabrics/Cosgriff, had experience, not only in sales, but specifically, he had developed the skills to sell fabrics before joining Valdese.  In fact, Cosgriff's daughter, Stacey Weinberg, who was an employee of Highland Fabrics representing Valdese, testified that she learned to sell from her father while working for Highland during its representation of Mastercraft.[54]  Accordingly, the second Reid factor weighs in favor of a finding that Plaintiff was an independent contractor.

**3.**      **Reid Factor 8:** *The method of payment weighs in favor of independent contractor status*

The eighth Reid factor analyzes the method by which an individual was paid.  In cases where employees are paid on commissions, this factor weighs in favor of an independent

---

[51]  (Gilbride SJ Dec., Ex. "5," S.C. Dep. Tr. Vol. 1 at p. 11-12).
[52]  (Gilbride Dec., Ex. "C," S.C. Dep. Tr., Vol. 1, at p 14:8).
[53]  (Gilbride SJ Dec., Ex. "6", N.N. Dep. Tr. at p. 31-32).
[54]  (Gilbride SJ Dec., Ex., "7," S.W. Dep. Tr. at pp. 27-28).

contractor relationship.  See, <u>Eisenberg</u> (defendant treated plaintiff as an independent contractor for tax purposes, giving her a "1090" tax form rather than a "W-2" form, and not deducting or withholding taxes from her wages); See also, <u>Williams</u> (the fact that Plaintiff received 1099s instead of W2s, was paid solely on commission, took tax deductions for expenses, and did not receive any employee benefits from Defendant were highly indicative of a person who is independent); <u>Speen v. Crown Clothing Corp.</u>, 102 F.3d at 633 (1st Cir. 1996)(the fact that plaintiff was paid on a commission basis weighs in favor of finding independent contractor status).   Moreover, courts have found that Plaintiff's independence in the manner and means of their work is reflected in the fact that Plaintiff's payment was based on performance.  See, <u>Tuohy</u> at  *4. In line with this precedent, this factor weighs heavily in favor of independent contractor status in the instant matter.

It is undisputed that Valdese paid commissions to Highland Fabrics from 2001 to 2008 reported on IRS Form 1099s, and Highland then issued payments to, *inter alia*, Stuart Cosgriff.[55] Highland also issued compensation to Hilary Cosgriff.[56] It is undisputed that Cosgriff never asked Valdese to withhold taxes from his commissions.[57]  In fact, Cosgriff testified that he would "never think" of not having money come in. [He] had money come in and worked with his accountant. [He] didn't need Valdese to hold his taxes.[58]  It is also undisputed that Highland Fabrics took corporate tax deductions for employee benefits, vehicles, commissions.[59]    This factor weighs heavily in favor of finding that Highland/Cosgriff was an independent contractor.

4.    <u>**Reid Factor No. 13:** *Cosgriff reported as an independent contractor to taxing authorities*</u>

---

[55] (Gilbride Dec., Ex. "C," S.C. Dep. Tr., Vol. 1, at p. 92:3-16; Gilbride Dec., Ex. "E," N.N. Dep. Tr. at p.57: 2-4, Gilbride Dec., Ex. "I," IRS Form 1099s).
[56] Gilbride SJ Dec., Ex. "11," H.C. Dep. Tr. at p. 30-32)
[57] (Gilbride Dec., Ex. "C," S.C. Dep. Tr., Vol. 1, at p. 146: 20-22).
[58] (Gilbride SJ Dec., Ex., "5," S.C. Dep. Tr., Vol. 1 at pp. 146-147).
[59] (Gilbride Dec., Ex. "D," S.C. Dep. Tr., Vol. 2, at pp. 128-35, Gilbride Dec., Ex. "L").

Cosgriff consistently represented to tax authorities that he was not an employee of Valdese, and received substantial financial benefits from his independent employment status.

It is undisputed that Highland filed corporate tax returns.  It is undisputed that Cosgriff incorporated his business to be able to separate his business and personal expenses.[60]  It is undisputed that his wife's company, Summa Interiors', earnings are reflected in Highland's corporate tax returns.[61]  It is undisputed that Highland Fabrics took corporate tax deductions for employee benefits, vehicles, commissions.[62]  It is undisputed that Cosgriff never asked Valdese to withhold taxes from his commissions.[63]  Highland's tax treatment is a virtual admission of Cosgriff's status as an independent contractor.

In Tagare, the Court found that Plaintiff's representations to tax authorities constituted a "virtual admission" of his status as an independent contractor.  Tagare, supra, at 155 citing Aymes at 862-864 (hiring party's tax treatment of plaintiff constituted "virtual admission" of plaintiff's status; "we attach [significant weight to hiring party's] choice to treat [hired party] as an independent contractor when it was to [hiring party's] financial benefit.  Now that this treatment is no longer to [hiring party's] benefit, [it] must still adhere to the choice it made.");  O'Dell, slip op. at 3 (hired party's conduct was "virtual admission" of her status as independent contractor where, for up to ten months after commencing her Title VII action, she represented her independent status in tax returns and "took advantage of the tax benefits and advantages afforded to independent contractors"; hiring party also did not withhold taxes or pay payroll taxes or social security on her behalf). Like the defendant in Aymes Cosgriff must adhere to the choice he made when it was in his financial benefit years ago, even though he may now believe

---

[60] (Gilbride Dec., Ex. "C," S.C. Dep. Tr., Vol.1, at p. 19:23-25).
[61] (Gilbride Dec., Ex. "D," S.C. Dep. Tr., Vol. 2, at p. 135-136; Gilbride Dec., Ex. "L").
[62] (Gilbride Dec., Ex. "D," S.C. Dep. Tr., Vol. 2, at pp. 128-35, Gilbride Dec., Ex. "L").
[63] (Gilbride Dec., Ex. "C," S.C. Dep. Tr., Vol. 1, at p. 146: 20-22).

16

it is no longer to his benefit.  Aymes at 862 (finding that Defendant could not in one context be able to call plaintiff an independent contractor and ten years later deny him that status to avoid a copyright infringement suit).  Cosgriff's representation to tax authorities, and Valdese's tax treatment of Highland indisputably reflects Cosgriff's independent contractor status.

5.   **Reid Factor No. 12**: *Valdese did not provide employee benefits to Cosgriff*

Plaintiff does not allege that he received any employee benefits from Valdese.  It is undisputed that Cosgriff paid for his own health insurance, life insurance and for his accountant's services.[64]  It is undisputed that Valdese did not withhold federal or state income taxes on payments to Cosgriff.  Thus, Valdese consistently treated Highland/Cosgriff as an independent contractor, and the twelfth Reid factor weighs entirely in favor of finding the Cosgriff was an independent contractor.

6.   **Reid Factor No. 3**: *Cosgriff was the source of the tools of his work*

It is undisputed that selling ability is the primary tool of Valdese's sales representatives. (Taylor at ¶ 7).  Salesmanship is the principal skill used by Cosgriff to perform his work was not provided by Valdese.  See, Tuohy v. Bally, Inc., 1991 WL 66784 at *4 (S.D.N.Y. 1997) (holding that while the hired party was provided with training and sales samples, he was an independent contractor because his salesmanship, which is the principal skill used to perform his work, was not provided by the hiring party).

There are few other sales tools required in selling fabrics.  Sales Representatives are provided fabric samples from Valdese in order to assist in the selling efforts.  Sales Representatives carry the fabrics in bags.  Cosgriff purchased such bags for Highland Fabrics.[65] Cosgriff also paid for, *inter alia*, his car, computer, overhead, pencils, pens, utilities, and

---

[64] (Gilbride Dec., Ex., "C," S.C. Dep., Vol. 1, Tr. at p. 148: 6-13).
[65] (S.C. Dep. Tr. at p. 143:17-25; 144:1-23).

phone.[66]   Also, it is undisputed that Cosgriff used his car, a Mercedes, which according to Highland's tax return was used 100% of the time to perform for Highland, and that expense was deducted from Highland's corporate taxes.[67]  See, <u>Weary v. Cochran</u>, 377 F.3d 522, 527(6th Cir 2004) (finding plaintiff himself was the source of the instrumentalities and tools used in plaintiff salesman's business where plaintiff paid for his own "office equipment, internet, phone service, postage, copies and automobile finding in this factor weighs in favor of independent contractor status).

Cosgriff attempts to create a factual issue on this <u>Reid</u> factor by claiming that he had business cards with the Valdese name, answered the telephone "Valdese Weavers," and the lobby directory in the building directed visitors to "Valdese Weavers."[68] [69]  These facts, even taken in the light most favorable to Plaintiff as required at this stage, are insignificant and negligible.  The Plaintiff in <u>Williams</u> attempted to create an issue of fact by pointing out that Defendant had provided him with business cards with the company logo on them, letterhead, and sales reporting software.  The <u>Williams</u> Court found these facts unavailing.  See e.g., <u>Tagare,</u> supra (business cards), <u>Tuohy</u> supra (samples), <u>Speen</u>, (samples).  Thus, these "tools" are insignificant in the <u>Reid</u> analysis, particularly in view of the fact that Cosgriff's primary tool was salesmanship.  The third <u>Reid</u> factor, without doubt, weighs in favor of independent contractor status.

**7.**     **Reid Factor No. 4:** *Cosgriff worked out of a space leased to Highland Fabrics*

The fourth <u>Reid</u> factor analyzes the location of an individual's work.  It is undisputed that

---

[66] (Gilbride Dec., Ex. "D," S.C. Dep. Tr. Vol. 2 at p. 133:15-25; 134: 1-8(car) (Gilbride Dec., Ex. "C," S.C. Dep., Vol. 1, Tr. at p. 120:16-20 (computer) (Gilbride SJ Dec., Ex. "5," S.C. Dep. Tr., Vol. 1, at pp. 115 and 142 (overhead, pens/pencils))(Gilbride Dec., Ex. "L," Expense deductions on Tax Returns (phone and utilities)).
[67] (Gilbride Dec., Ex. "D," S.C. Dep. Tr. Vol. 2 at p. 133:15-25; 134: 1-8).
[68] It is undisputed that Valdese did not require Cosgriff to use the name "Valdese Weavers" at his agency. Taylor Dec. at ¶ 17 and 18.
[69] It was Cosgriff's decision how to use the Valdese name in his business. (Taylor Dec. at ¶ 18-19).

Highland, not Valdese, leased a showroom in New York where Highland representatives showed Valdese's product line.  It is also undisputed that in 2001, Highland Fabrics took over lease payments for a space in New York located at 37 East 28th Street.[70] It is also undisputed Highland Fabrics entered into a lease agreement for a space located at 11 E. 26th Street, New York, New York 10010 in or around 2004.  Highland paid for the move to the new space, and was responsible for the lease payments.[71]  The location of the work belonged to Highland.  Thus, the fourth <u>Reid</u> factor weighs in favor of an independent contractor relationship.

8.    **<u>Reid Factor No. 9:</u>** *Highland/Cosgriff hired representatives*

Prior to, and during Highland's representation of Valdese, Highland paid several sales representatives to represent Mastercraft and, subsequently, Valdese.  Highland also hired several assistants.  The fact that Highland was able to hire and pay assistants weighs in favor of a finding that he was an independent contractor.  See, <u>Anyan v. New York Life Ins. Co.</u>, 192 F.Supp.2d 228, 238-39 (S.D.N.Y. 2002).

It is undisputed that Highland hired Plaintiff's daughter, Stacey Cosgriff Weinberg, to represent Mastercraft in or around 1995.  It is also undisputed that Weinberg remained an employee of Highland during its representation of Valdese.  It is undisputed that Highland paid Weinberg reporting those payments on IRS W-2 forms, and subsequently IRS Form 1099s.[72] Plaintiff's claim that Weinberg was also a Valdese employee is without merit.

It is undisputed that Highland hired Neil Nahoum as a Sales Representative to represent Mastercraft prior to Highland's representation of Valdese.[73]  It is undisputed that Nahoum left

---

[70] (Gilbride Dec., Ex. "C," S.C. Dep. Tr., Vol. 1, at p. 25:8-12).
[71] (Gilbride Dec., Ex. "C," S.C. Dep. Tr., Vol. 1, at pp. 120: 21-25 and 121:1-3; 131:11-25; and 135:9-25; Gilbride Dec., Ex. "J," Lease Agreement for 11 E. 26th St.).
[72] (Gilbride Dec., Ex. "C," S.C. Dep. Tr., Vol. 1, at p. 70:12-16; Gilbride Dec., Ex. "G," S.W. Dep. Tr. at p. 18:1-24).
[73] (Gilbride Dec., Ex. "C," S.C. Dep. Tr., Vol. 1, at p. 35:3-18).

Highland to enter into an independent sales representation relationship with Craftex, another mill in the industry,[74] but subsequently returned to Highland in or around 2005, and was paid by Highland to represent Valdese.[75]

It is undisputed that Cathy Schneider was hired to represent Valdese's line in the contract division.[76]  Commissions on sales initiated by Schneider were paid to Highland Fabrics, and Highland paid Schneider's salary.[77]  The ninth factor weighs in favor of finding that Cosgriff was an independent contractor.

**9.      Reid Factor No. 5:** *The duration of the relationship between the parties*

The duration of the relationship factor weighs in favor of independent contractor status. It is undisputed that Highland Fabrics represented Valdese for approximately seven (7) years. The parties negotiated and entered the ISR Agreement, which provides that it would remain effective until terminated by either party on thirty (30) days' notice.[78]  Thus, while Highland's relationship with Valdese lasted for several years, the parties contemplated and negotiated a relationship that could be terminated by a mere thirty (30) days notice.  The duration of the relationship is insufficient to overcome summary judgment. See e.g., Williams (hired party was an independent contractor despite working with hiring party for seven (7) years).

**10.     Reid Factor No. 6:** *Valdese did not assign additional projects to Cosgriff*

Plaintiff does not allege, nor is there any factual basis to allege, that Valdese assigned any "additional projects" to Cosgriff.  Cosgriff was only asked to provide services related to Plaintiff's position as a sales representative.  Thus, this factor weighs entirely in favor of finding that Cosgriff was an independent contractor.

---

[74] (Gilbride SJ Dec., Ex. "6," N.N. Dep. Tr. at p 10-13)
[75] (Gilbride Dec., Ex. "C," S.C. Dep. Tr., Vol. 1, at p. 64:10-18).
[76] (Gilbride Dec., Ex. "C," S.C. Dep. Tr., Vol. 1, at pp: 111-112).
[77] Id.
[78] (Gilbride Dec., Ex. "H").

11.    **Reid Factor No. 7:** *Cosgriff had discretion over how and when to work*

This factor was addressed above in Valdese's discussion of the first <u>Reid</u> factor regarding Plaintiff's complete discretion in setting his hours and determining his day-to-day activities. For the reasons set forth above, this factor weighs in favor of finding that Cosgriff was an independent contractor.

12.    **Reid Factor Nos. 10 and 11**:    *Whether the work is part of the regular business of the hiring party/ whether the hiring party is in business*

The Second Circuit has held that the tenth and eleventh <u>Reid</u> factors are not strongly indicative of employment status.  <u>Aymes</u>.  The Second Circuit stated that the purpose of the tenth factor is to determine whether the hired party is performing tasks that directly relate to the objective of the hiring party's business.  <u>Aymes</u> at 863.  The <u>Aymes</u> Court noted that "this factor will generally be of little use" and "carries very little weight."  <u>Id</u>.  The <u>Aymes</u> Court explained that many companies hire individuals that do not work in the hiring party's business such as accountants, custodians, and assistants, thus this factor is not indicative of employment status. <u>Id</u>.  As noted by the <u>Tagare</u>. Court, this may be the reason that courts rarely even address this factor.

Similarly, the <u>Aymes</u> Court noted that the eleventh factor will always have very little weight in the <u>Reid</u> analysis because, while it indicates that a hiring company was in a business, it indicates nothing about whether a plaintiff is an employee in that business.  <u>Id</u>.  Thus, the Second Circuit found that the eleventh factor will generally be of little help.  <u>Id</u>.  Under similar circumstances, hired parties who are able to show factors ten and eleven support employee status, are ultimately determined to be independent contractors.  See e.g., <u>Williams</u>.  The tenth and eleventh factors are unhelpful, negligible, and even if they weigh in Plaintiff's favor, which they do not, are insufficient to survive summary judgment on this issue.

21

14.   <u>Other Considerations</u>

As the <u>Reid</u> factors are not exhaustive, courts have considered other facts to assess employment status.  In this matter, it is undisputed that Plaintiff's wife, Hilary Cosgriff, is an officer with Highland Fabrics, and that her company, Summa Interiors, has been a division of Highland Fabrics since approximately 2005.[79]  It is also undisputed the Hilary Cosgriff was paid a salary from Highland Fabrics.[80]  Hilary Cosgriff's company Summa Interiors did not conduct business on behalf of Valdese.  The fact that a wholly separate entity was operated as a division of Highland Fabrics is highly indicative of Highland's independence from Valdese.  Summa's role in Highland's tax treatment is yet another virtual admission that Cosgriff was an independent contractor.

Additionally, Highland had a long history as an independent sales agency, Highland also intended to have a future as an independent sales agency. In December 2008 through January 2009, Highland worked for Paragon Fabrics.[81]  Cosgriff testified his understanding that he would have control in effectuating sales at Paragon, including setting his own hours and making his own contacts.[82]  Independent sales is the way Stuart Cosgriff has done business in the textile industry throughout his extensive career, and the way he did business with Valdese, and the way he  intends to operate going forward.

Considering the <u>Reid</u> factors and other considerations as a whole, a reasonable jury could only conclude that "the balance tips [heavily] in favor of independent contractor status." <u>Barnhart v. New York Life Ins. Co.,</u> 141 F.3d 1310, 1313 (9th Cir. 1998). Cosgriff was an independent contractor for Valdese.

---

[79]  (Gilbride Dec., Ex. "C," S.C. Dep. Tr., Vol. 1, at p. 20:22-25 – 22:13).
[80]  (Gilbride Dec., Ex. "D," S.C. Dep. Tr., Vol. 2, at p. 129:9-19, 130-131, Gilbride Dec., Ex. "L").
[81]  (Gilbride SJ Dec., Ex. "5," S.C. Dep. Tr. at p. 36-41).
[82]  (Id. at pp. 40-41).

C.    <u>Balancing the Reid Factors</u>

Courts in this Circuit have found salesman plaintiffs are independent contractors under similar facts.  For example, the balance of the <u>Reid</u> factors in <u>Williams</u> is similar to the balance of the <u>Reid</u> factors present in the instant matter.

In <u>Williams</u>, Defendant CF Medical, Inc. ("CF") sold various manufacturers' medical equipment and supplies, the majority of which are Philips Medical ("Philips") products.  <u>Id</u>. at *2.  Williams was a sales representative selling medical supplies for CF from 1998 until 2005. <u>Id</u>.  Williams had significant sales experience revolving around medical supplies and equipment, which requires a certain level of sophisticated knowledge.  <u>Id</u>. at * 5.  Williams carried out his responsibilities as a sales representative on a day-to-day basis generally unsupervised by Defendant.  <u>Id</u>. at *8.  The parties entered into yearly contracts, beginning January 1, 1998, and ending December 31, 2005.  <u>Id</u>. at *2.  Plaintiff was notified that Defendant would not be renewing his contract for 2006.  <u>Id</u>.  Plaintiff brought claims under the Age Discrimination in Employment Act ("ADEA") and the NYHRL.  <u>Id</u>.

Williams was paid on straight commission for his services to Defendant and never received a salary.  <u>Id</u>. Williams did not receive any health or dental insurance from Defendant, nor did he participate in Defendant's retirement plan.  <u>Id</u>. Williams worked out of his home and was responsible for the expenses related to his position as a sales representative, including his car, gas, computer, fax machine, internet, postage, storage, utilities, phone, and all of the supplies necessary for his office.  <u>Id</u>. Williams also had the ability to hire a staff person for his home office, although he did not do so.  <u>Id</u>.

Williams received 1099 forms from Defendant for each and every one of those years, and accordingly treated himself as self employed for tax purposes for those years.  <u>Id</u>. at *3.  Also

during those years, Plaintiff took a number of tax deductions relating to his home office and his status as a self employed person for items such as office supplies, internet access, and telephone access and travel expenses.  Id. Based on the Reid factors, the Northern District of New York held that Williams was an independent contractor. Id. at *8.

Like the Plaintiff in Williams, Cosgriff had an undergraduate degree in marketing and was a sophisticated salesman with years of experience in the textile industry.[83]  He carried out his responsibilities as a sales representative on a day-to-day basis generally unsupervised by Valdese.[84]  Highland was paid on straight commission.[85]  Cosgriff did not receive any health or life insurance through Valdese, and was responsible for his car, computer, and all of the supplies necessary for his office.[86]

Like Williams, Cosgriff received 1099 forms from Defendant and took a number of tax deductions relating to his Highland's expenses.[87]  While Williams worked from home, Cosgriff worked from a showroom leased to his company and was for the rent payments.[88]

The Reid factors in Cosgriff's case are virtually identical to the facts in Williams. Accordingly, Cosgriff must also be deemed an independent contractor. See also, Frankel v. Bally, 64 Fair Empl. Prac. Cas. 903 (S.D.N.Y. 1994); Tuohy at *4. (S.D.N.Y. 1997)(Plaintiff representing Defendant shoe company selling shoes was an independent contractor).  There is no genuine issue of material fact as to whether Plaintiff was an independent contractor, and

---

[83] (Gilbride SJ Dec., Ex. "5," S.C. Dep. Tr. Vol. 1 at p. 11; Gilbride Dec., Ex. "C," S.C. Dep. Tr., Vol. 1, at p 14:8).
[84] (Gilbride SJ Dec., Ex., "5" S.C. Dep. Tr., Vol. 1 at pp. 121-122, 136).
[85] (Gilbride Dec., Ex. "C," S.C. Dep. Tr., Vol. 1, at p. 92:3-16).
[86] (Gilbride Dec., Ex. "C," S.C. Dep., Vol. 1, Tr. at p. 22:14-25; 120:16-20;148: 6-13, Gilbride Dec., Ex. "E," N.N. Dep. Tr. at p.57: 2-4,  Gilbride Dec., Ex. "K," Gilbride Dec., Ex. "E," N.N. Dep. Tr. at p. 57:12-16).  (Gilbride Dec., Ex. "D," S.C. Dep. Tr. Vol. 2 at p. 133:15-25; 134: 1-8(car) (Gilbride Dec., Ex. "C," S.C. Dep., Vol. 1, Tr. at p. 120:16-20 (computer) (Gilbride SJ Dec., Ex. "5," S.C. Dep. Tr., Vol. 1, at pp. 115 and 142 (overhead, pens/pencils))(Gilbride Dec., Ex. "L," (Highland Deductions-phone and utilities)).
[87] (Gilbride Dec., Ex. "C," S.C. Dep. Tr., Vol. 1, at p. 92:3-16; Gilbride Dec., Ex. "I," IRS Form 1099s;Gilbride Dec., Ex. "D," S.C. Dep. Tr., Vol. 2, at pp. 128-35, Gilbride Dec., Ex. "L").
[88] (Gilbride Dec., Ex. "C," S.C. Dep. Tr., Vol. 1, at pp. 120: 21-25 and 121:1-3; 131:11-25; and 135:9-25; Gilbride Dec., Ex. "J," Lease Agreement).

Defendant is entitled to summary judgment on this issue.

## **CONCLUSION**

Summary judgment should be granted as a matter of law in favor of Defendant because Cosgriff was an independent contractor with Valdese. Defendant respectfully request that Plaintiff's Complaint be dismissed in its entirety *with prejudice*.

Dated: New York, New York
      March 14, 2011

Respectfully submitted,

KAUFMAN BORGEEST & RYAN LLP

By: _____

Joan M. Gilbride
*Attorneys for Defendant*
120 Broadway, 14th Floor
New York, New York 10271
Telephone: (212)980-9600
Facsimile: (212)980-9291

TO:    Murray Schwartz
        SCHWARTZ & PERRY LLP
        *Attorneys for Plaintiff*
        295 Madison Avenue
        New York, New York 10017
        Telephone (212) 889-6565

25

1480596