UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
STUART COSGRIFF,

                            Plaintiff,

                  -against-

VALDESE WEAVERS LLC,

                            Defendant.
------------------------------------------------------------x

                                                      09 CV 5234 (KMW) (MHD)
                                                      **OPINION & ORDER**

WOOD, U.S.D.J.:

       Plaintiff Stuart Cosgriff ("Cosgriff") brings this diversity action against Defendant,

Valdese Weavers LLC ("Valdese"), alleging that Valdese terminated its business relationship

with Cosgriff because of his age, in violation of § 8-107(1)(a) of the New York City Human

Rights Law ("NYCHRL"), and his perceived disability, in violation of § 8-107(1)(a) of the

NYCHRL.  Cosgriff also alleges that Valdese terminated its business relationship with him in

retaliation for Cosgriff's filing of a sexual harassment complaint, in violation of § 8-107(7) of the

NYCHRL.  Pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"), Valdese moves for

summary judgment on the ground that Cosgriff is an independent contractor and therefore not

entitled to the protections afforded by the NYCHRL.  For the reasons set forth below, Valdese's

motion for summary judgment is GRANTED.

## I.  SUMMARY JUDGMENT STANDARD

       Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R.

Civ. P. 56(a).  A genuine issue for trial exists if, based on the record as a whole, a reasonable

jury could find in favor of the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986); *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009).  In

resolving this inquiry, the Court construes all evidence "in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267, 271 (2d Cir. 2011).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Miner v. Clinton Cnty., N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008). Once the movant satisfies this burden, the onus shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (internal quotations omitted). The non-moving party may not rely on "conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor. *Anderson*, 477 U.S. at 256-57. "If reasonable minds could differ as to the import of the evidence and if there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party . . . cannot obtain a summary judgment." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988) (internal quotation omitted). Yet, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986) (citations omitted).

As noted above, since Cosgriff is the party opposing summary judgment, the Court views the evidence in the light most favorable to him and draws all reasonable inferences in his favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## II. FACTUAL BACKGROUND

Unless otherwise noted, the following facts are undisputed and are derived from the parties' Local Civil Rule 56.1 statements, affidavits, and other submissions. The Court deems admitted any statement of material fact that is not specifically controverted by the opposing party. *See* Fed R. Civ. P. 56.1(c). The Court resolves all ambiguities and draws all reasonable inferences in Cosgriff's favor. *See Sledge*, 564 F.3d at 108.

Cosgriff began his career in the textile industry in 1972, working as an employee of Mastercraft Fabrics ("Mastercraft"), a fabric manufacturer and seller in North Carolina. (Defendant's Local Civil Rule 56.1 Statement ( "Def. 56.1 Stmt.") ¶¶ 8-9; Plaintiff's Response to Defendant's  56.1 Statement ("Pl.'s Resp. to Def. 56.1 Stmt.") ¶¶ 8-9.) In 1977, Cosgriff moved to New York to work in sales for Mastercraft. (Def. 56.1 Stmt. ¶ 9; Pl.'s Resp. to Def. 56.1 Stmt. ¶ 9.) In 1978, Cosgriff resigned from Mastercraft, incorporated a sales agency called Cosgriff Associates, and began to sell Mastercraft fabrics as an independent contractor. (Def. 56.1 Stmt. ¶¶ 10-11; Pl.'s Resp. to Def. 56.1 Stmt. ¶¶ 10-11.) In 1992, Cosgriff dissolved Cosgriff Associates and incorporated Highland Fabrics as a successor corporation, continuing to sell Mastercraft fabrics as an independent contractor. (Def. 56.1 Stmt. ¶ 12; Pl.'s Resp. to Def. 56.1 Stmt. ¶ 12.). Cosgriff incorporated Highland Fabrics in part so that he could include his wife's new interior decorating company, Summa Interiors, as a division of Highland Fabrics. (Def. 56.1 Stmt. ¶ ¶ 13-14; Pl.'s Resp. to Def. 56.1 Stmt. ¶¶ 13-14.) Cosgriff and his wife, Hilary Cosgriff, are the joint shareholders of Highland Fabrics. (Affidavit of Brian Heller, dated January 7, 2011, ("Heller Aff.") Ex. H (Deposition of Stuart Cosgriff, dated September 2, 2010 ("Cosgriff Dep. I")) at 18-19.)

Valdese is a textile company headquartered in North Carolina that produces and sells fabrics. (Def. 56.1 Stmt. ¶ 1.) In April 2001, Valdese and Highland Fabrics/Stu Cosgriff executed an Independent Sales Representative Agreement ("the Agreement") pursuant to which Highland Fabrics would represent Valdese in its Northeast Sales Territory. (Def. 56.1 Stmt. ¶ 18; Pl.'s Resp. to Def. 56.1 Stmt. ¶ 18.) Although the parties dispute the extent to which the contractual language reflects the actual intent of the parties, the Agreement expressly states that Highland Fabrics/Stu Cosgriff would be considered an independent contractor rather than an employee: "[Valdese] and [Highland Fabrics] intend that the relation of [Highland Fabrics] to [Valdese] is that of an independent contractor. Neither [Highland Fabrics] nor any agent, employee, or servant of [Highland Fabrics] shall be or shall be deemed to be the employee, agent, or servant of [Valdese]." (Def. 56.1 Stmt. ¶ 21; Pl.'s Resp. to Def. 56.1 Stmt. ¶21; Heller Aff., Ex. A, Independent Sales Representative Agreement ("Agreement") ¶ 14.) Under the Agreement, Highland Fabrics and its principals were to use their "own judgment and discretion in the actual performance of the sales representation herein provided for, including the time that such representation shall be performed." (Agreement ¶ 12.) Highland Fabrics was also to pay for its own costs and expenses in representing Valdese, including "office expense, personnel expense, transportation, lodging, meals, customer entertainment, etc." (*Id.* ¶ 11.)

The Agreement limited the authority Valdese gave to Highland Fabrics and stated that Highland Fabrics did not have the power to make contracts in the name of or binding on Valdese. (*Id.* ¶ 13.) All orders taken by Highland Fabrics were subject to acceptance and confirmation by Valdese. (*Id.* ¶ 4.) Valdese retained the right to decline to accept any order, decline to ship any products, discontinue sale of any product, or to allocate products during periods of shortages. (*Id.*)

The Agreement further stipulated that Valdese would pay Highland Fabrics on a commission basis, according to the selling price of the products that Highland Fabrics sold. (Agreement ¶ 6.)  Valdese recorded the payments of those commissions on Internal Revenue Service 1099 Forms and never issued a W-2 form to Cosgriff or anyone else at Highland Fabrics. (Def. 56.1 Stmt. ¶ 23; Declaration of Joan Gilbride, dated March 14, 2011 ("Gilbride Dec."), Ex. I).  Highland Fabrics, in turn, issued payments to Cosgriff and others at Highland Fabrics.  (Def. 56.1 Stmt. ¶ 23.)  Cosgriff purchased his own computer, health insurance, life insurance, and accountant services and represented them all as business expenses of Highland Fabrics.  (*Id.* ¶ 31.)

Valdese provided all the fabric samples that Highland Fabrics distributed to customers. (Pl.'s Resp. to Def. 56.1 Stmt. ¶ 91.)  Statements conflict as to Valdese's control over the distribution of the samples, specifically, whether Valdese dictated which customers would receive samples, or whether the decisions were made by Valdese in collaboration with the sales representative based on the representative's recommendation and historical sales. (Def.'s Counterresp. to Pl.'s 56.1 Counterstmt. ¶ 95.)

Highland Fabrics hired Cosgriff's daughter, Stacey Weinberg, as well as Neil Nahoum ("Nahoum") and Cathy Schneider ("Schneider"), as employees. (Def. 56.1 Stmt. ¶¶ 34-38; Pl.'s Resp. to Def. 56.1 Stmt. ¶¶ 34-38.)

When Highland Fabrics first contracted with Valdese in 2001, Highland Fabrics assumed the lease for a space at 37 East 27th Street, which had been used previously by another independent contractor representing Valdese.  (Pl.'s Resp. to Def. 56.1 Stmt. ¶ 28.)  In 2004, Highland Fabrics changed showrooms, entering into a lease agreement for a space located at 11 E. 26th Street.  (*Id.* at ¶ 29; Gilbride Dec. Ex. J)  Highland paid for the move and was responsible

for all lease payments.  (Def. 56.1 Stmt. ¶ 29; Pl.'s Resp. to Def. 56.1 Stmt. ¶ 29.)  Prior to the move, a Valdese employee traveled to New York to view the space.  Cosgriff states that Valdese's approval of the space was required. (Pl.'s Resp. to Def. 56.1 Stmt. ¶ 96.)  The showroom doors in both buildings displayed Valdese's name and logo, and "Valdese Weavers" also appeared on the building directory in the lobby of the 37 East 27th Street showroom.  (*Id*. ¶ 87.)

Cosgriff answered the office phones, "Valdese Weavers" and distributed business cards with that name.  (*Id*. ¶¶ 86, 90.)  When in New York, Valdese personnel also used the showroom as office space, and both parties agree that, for some period of time, Valdese reimbursed between $1,000 and $1,200 per month of Highland Fabric's expenses; the parties dispute whether that payment was made as a payment of rent in exchange for Valdese's use of a desk, computer, and phone. (Def.'s Counterresp. to Pl.'s 56.1 Counterstmt. ¶ 85; Cosgriff Dep. I. at 119, 135, 140.)

Beginning in 2001 and continuing intermittently through 2008, Cosgriff complained to managers at Valdese Weavers about sexual harassment of female customers and female employees by Mike Shelton, Valdese's President of Sales.  On one occasion, in 2002, Cosgriff witnessed Shelton "inappropriately hug" a female Valdese employee.  (Cosgriff Dep. I at 173.)  On other occasions Cosgriff was informed of the harassment by others.  (*Id*.)  In October 2008, a female Valdese employee filed an employment discrimination claim against Valdese with the Equal Employment Opportunity Commission, alleging that Shelton engaged in a persistent campaign of sexual harassment against her.  (Heller Aff., Ex. G.)

In 1978, Cosgriff had been in a motor vehicle accident and injured his left leg, requiring multiple surgeries and skin grafts.   (Def. 56.1 Stmt. ¶ 45.)  This injury was well known to individuals at Valdese.  (Def. 56.1 Stmt. ¶ 47; Pl.'s Resp. to Def. 56.1 Stmt. ¶ 47.)  Between

2001 and 2008, Cosgriff twice wore a temporary boot and used a cane to stabilize his foot after stress fractures.  (Pl.'s Resp. to Def. 56.1 Stmt. ¶ 48.)  )  Cosgriff also underwent three neck surgeries during 2003 and 2004.  (*Id*. ¶ 49.)  Cosgriff's lower left leg and foot were amputated on July 31, 2008. (Def. 56.1 Stmt. ¶ 50; Pl.'s Resp. to Def. 56.1 Stmt. ¶ 50.)  Cosgriff returned to work part-time on August 28, 2008 and returned to work full-time on October 1, 2008, shortly after which he began to use a prosthesis.  (Pl.'s Resp. to Def. 56.1 Stmt. ¶ 51.)  Cosgriff states that while he was speaking with Valdese managers in North Carolina over speakerphone, shortly before the surgery, Shelton made a comment referring to "Larry's Chop Shop," which Cosgriff states was a reference to his upcoming amputation.  (*Id*.)  Cosgriff also states that in October of 2008, another Valdese manager said, "it is very weird to see you without your bad foot."  (*Id*.)

On November 21, 2008, Valdese terminated the Agreement with Highland Fabrics, after providing the requisite thirty days notice required by the contract.  (Def. 56.1 Stmt. ¶ 69.)  Cosgriff at that time was 60 years old.  (Def. 56.1 Stmt. ¶ 20.)  Valdese entered into a new agreement with NMN Fabrics and its principals Neil Nahoum and Cathy Schneider, who were two of the sales representatives who had been associated with Highland Fabrics, and who were both younger than Cosgriff.  (Def. 56.1 Stmt. ¶ 70; Pl.'s Resp. to Def. 56.1 Stmt. ¶ 70.)

## III.  DISCUSSION

### A.  Applicable Law

The NYCHRL prohibits an employer from terminating an employee on the basis of, *inter alia*, age, disability, or the employee's engagement in an activity protected by that statute.  *See* NYCHRL, §§ 8-107(1); 8-107(7).[1]  The protections afforded by the NYCHRL extend to

---

[1] NYCHRL § 8-107(1) provides, in relevant part, that:
  "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of

employees only, and not to independent contractors. *Eisenberg v. Advance Relocation & Storage*, 237 F.3d 111, 113 (2d Cir. 2000); *Lavergne v. Burden*, 665 N.Y.S.2d 272, 273 (N.Y. App. Div. 1997).[2]  Whether a worker is an employee or an independent contractor is a question determined by the common law of agency. *Cmty for Creative Non-Violence v. Reid,* 490 U.S. 730, 739-40 (1989); *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008). The relevant test, articulated by the Supreme Court in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989), enumerates thirteen non-exhaustive factors from the common law of agency that a court should consider when determining a worker's status:

> "[1] the hiring party's right to control the manner and means by which the product is accomplished . . . [;][2] the skill required; [3] the source of the instrumentalities and tools; [4] the location of the work; [5] the duration of the relationship between the parties; [6] whether the hiring party has the right to assign additional projects to the hired party; [7] the extent of the hired party's discretion over when and how long to work; [8] the method of payment; [9] the hired party's role in hiring and paying assistants; [10] whether the work is part of the regular business of the hiring party; [11] whether the hiring party is in business; [12] the provision of employee benefits; and [13] the tax treatment of the hired party. "

*Reid*, 490 U.S. at 751-52.

When balancing the above factors, a court should consider only those factors "that are actually indicative of agency in the particular circumstances," *Salamon*, 514 F.3d at 227, and disregard those factors that are either "irrelevant" or are of "'indeterminate' weight." *Eisenberg*,

---

any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment. . . ."
NYCHRL § 8-107(7) provides, in relevant part, that:
"It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter. . . ."
[2] The Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 (2005) requires courts to review claims raised under the NYCHRL "independently from and 'more liberally' than their federal and state counterparts." *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009); *Williams v. N. Y. City Hous. Auth.*, 872 N.Y.S.2d 27 (N.Y. App. Div. 2009).  Section 8-107 of the NYCHRL holds only an "employer or an employee or agent thereof" liable for unlawful discriminatory practices, and thus the statute does not cover a claim by an independent contractor against the party that contracted with them. NYCHRL § 8-107(1)(a).

237 F.3d at 114 (quoting *Aymes v. Bonelli*, 980 F.2d 857, 861-63 (2d Cir. 1992)).  Although no single factor is dispositive, a court should place "the 'greatest emphasis' . . . on the first factor – that is, on the extent to which the hiring party controls the 'manner and means' by which the worker completes his or her assigned tasks."  *Eisenberg*, 237 F.3d at 114 (quoting *Frankel v. Bally, Inc.*, 987 F.2d 86, 90 (2d Cir. 1993)).  Moreover, in anti-discrimination cases, "courts *should not* ordinarily place extra weight on the benefits and tax treatment factors . . . and *should* instead place special weight on the [first factor]."  *Id*. at 117 (emphasis in original).

The "presence or absence" of each *Reid* factor is a question of fact, and the determination of whether a plaintiff is an employee or an independent contractor, based on those facts, is a question of law.  *Aymes*, 980 F.2d at 860-61.

### B.  Application of Law to Facts – The *Reid* Factors Individually

1. Control Over Manner and Means of Work

The most important factor in determining the existence of an employment relationship is the control or right of control by the employer of "both the result to be accomplished and the 'manner and means' by which the purported employee brings about that result."  *Eisenberg*, 237 F.3d at 114 (quoting *Hilton Int'l Co. v. NLRB*, 690 F.2d 318, 320 (2d Cir. 1982)).  At the crux of the control issue "is the balance between the employee's judgment and the employer's control."  *Salamon*, 514 F.3d at 229.

In his affidavit, Cosgriff makes the conclusory statement that "Valdese dictated my tasks on a daily basis."  (Affidavit of Stuart Cosgriff in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment, dated April 1, 2011 ("Cosgriff Aff.") ¶ 10.)  In his deposition, however, Cosgriff describes his daily work differently.  He initially states: "[T]here was one of three things to do: Either make a sales call. . . . where you show samples [-] that is

with somebody from North Carolina or without somebody from North Carolina.  We would like to have North Carolina people involved as designers or whatever, but it wasn't the only way I did it.  You either went to the office and worked on projects, or you went to the office and picked up samples and went to customers, or you went directly to customers." (Cosgriff Dep. I at 121.) Cosgriff is later asked, "You said that you split your time . . . between being in the office, on sales calls, or in North Carolina.  Whose choice was it to split your time up that way?"  (*Id*. at 136.)  Cosgriff responds, "Experience.  Me."  (*Id*.)  Cosgriff's statements in his deposition demonstrate that he retained significant discretion over how to structure his work and that he at times sought the presence and collaboration of Valdese employees from North Carolina.

Similarly, when asked about Valdese's involvement in his work and the arrangement of client meetings, he says, "It would depend on what . . . how things were going.  If we weren't doing something with Funwood, Calico Corners, or we weren't doing something with Duralee, it would be suggested, how do we get this going.  And I could make that suggestion, or North Carolina could say we're looking at what we're doing with our first five customers.  The sixth one we're not doing as much.  Let's concentrate on the sixth one.  And we would make the effort to get there." (*Id*. at 140.)  Again, Cosgriff describes a situation in which Valdese is actively involved, but he retains discretion over the manner in which he conducts his work.

Consistent with the limited authority Valdese granted to Highland Fabrics to make contracts in Valdese's name or binding on it, Valdese exercised control over the fabric samples that Cosgriff used in making sales, as well as control over the final price of sales.  (Agreement ¶¶ 4-5).  Cosgriff also states that Valdese directed when he would travel to North Carolina for sales meetings, trade shows, or visits to the mill and that Valdese structured Cosgriff's activities at

10

trade shows.  ((Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for

Summary Judgment ("Pl.'s Opp'n") at 7-8.)

The parties dispute whether or not Cosgriff could represent other customers.  Cosgriff

stated in his deposition that he never asked to represent other customers and that managers at

Valdese "implied that we had a full plate and I agreed."  (Heller Aff., Ex. I (Deposition of Stuart

Cosgriff, dated September 10, 2010 ("Cosgriff Dep. II")) at 164-65.)  In his affidavit, Cosgriff

asserts that "Valdese did not permit me to represent other lines." (Cosgriff Aff. ¶ 55.)  Drawing

all inferences in Cosgriff's favor, the Court assumes for the purposes of this motion that Cosgriff

could not represent other customers.  Such an arrangement, while informative, is not dispositive.

*See Tuohy v. Bally Inc.*, No. 95 CV 1499, 1997 WL 66784 at *2 (S.D.N.Y. Feb. 14, 1997)

(Scheindlin, J.).

Valdese clearly did exercise some control over the details of Cosgriff's work, but some

level of control is not inconsistent with the existence of an independent contractor relationship,

as the hiring party has entered into the contract in order to achieve a particular outcome, whether

it is the look of a sculpture, as in *Reid*, or the price of a sale, as here.  The level of control

exercised by Valdese does not approach the level of control exercised by the moving company in

*Eisenberg* or the hospital in *Salamon*.

In this case, Valdese staff communicated frequently with Cosgriff, expressed Valdese's

priorities, and communicated what meetings they would like to attend and when they were

available.  Nevertheless, Cosgriff's statements demonstrate that he continued to exercise

considerable judgment and discretion over the manner in which to conduct his day-to-day work.

Although the mere existence of some latitude in choosing a course of action is not dispositive of

the manner and means test, *Salamon*, 514 F.3d at 222, the record indicates that Cosgriff

possessed more authority and independence than a traditional employee.  Valdese was very involved in Cosgriff's sales representation, but the level of involvement by Valdese's managers in North Carolina was not the type of daily supervision and control that an employer would typically exercise over an employee.  On balance, the Court finds that this factor tips towards Cosgriff being an independent contractor, but is not conclusive.

### 2. Skill Required

After obtaining his bachelor's degree, Cosgriff went to work at the Mastercraft Mill in North Carolina in 1972.  (Cosgriff Dep. I at 14.)  Cosgriff started in the dye house, and subsequently held various positions at the mill, including being a sample weaver and working in customer service.  (*Id*. at 14-16.)  After several years, he became an assistant to Mastercraft's President.  (*Id*. at 14.)  In 1977, Cosgriff moved to New York, working at first in sales as an employee of Mastercraft, and then representing Mastercraft as an independent contractor.  (*Id*. at 17.)

Although being a commercial fabric salesman may not require the same type of specialized skill as being an engineer or a computer programmer, the record makes clear that Cosgriff was an accomplished fabric salesman with detailed knowledge of the industry.  He had specialized skills related to the production and sale of fabrics, and extensive experience selling fabric throughout the Northeastern United States.  Cosgriff acquired this expertise, knowledge, and skill through both experience and education he obtained before representing Valdese.  The "skill" factor thus supports the conclusion that Cosgriff was an independent contractor.

### 3. Source of the Instrumentalities and Tools

The primary instrumentalities and tools of Cosgriff's work were the samples he showed to customers, the car that he used to make sales calls, and the computer that he worked from in

the office.  It is undisputed that Valdese provided the samples that Cosgriff took with him on sales calls.  Indeed, any fabric salesman, independent or otherwise, would generally need to use samples from the manufacturer in order to sell their products.  The fact that the manufacturer provides those samples does not necessarily create an employment relationship.  *See Williams v. CF Med., Inc.*, No. 06 CV 0827, 2009 WL 577760, at *6 (N.D.N.Y. Mar. 4, 2009); *Tuohy*, 1997 WL 66784, at *3.

Cosgriff and the others at Highland Fabrics selected and paid for their own computers, and sent them to Valdese in North Carolina to have sales software compatible with Valdese's programs installed. (Cosgriff Dep. I 120.)  Cosgriff used his own car to make sales calls.  On balance, the fact that Cosgriff used his own car and his own computer outweigh the fact that Valdese provided him samples, supporting the conclusion that he was an independent contractor.

### 4. Location of the Work

Cosgriff did not work out of Valdese's office in North Carolina, but instead out of an office that Cosgriff's corporation, Highland Fabrics, leased in New York City.  Highland Fabrics initially took over the lease on a space that had been used previously by another independent contractor representing Valdese.  (Cosgriff Dep. I at 25; *id*. at 61.)  The majority of the furniture in the office was inherited from the previous leaseholder, and Highland Fabrics purchased two work tables to add to the space.  (*Id*. at 148.)  In 2004, Cosgriff selected a new office for Highland Fabrics and a manager from Valdese came to New York to examine and approve the space.  (Cosgriff Aff. ¶ 43; Heller Aff., Ex. K (Deposition of Zachary David Taylor dated September 30, 2010) at 106.)  Although Valdese personnel frequently used the showroom as office space when they were in New York, and Valdese's name was on the doors, no managers from Valdese worked out of the office on a permanent basis.  (Cosgriff Aff. ¶¶ 39-41; Cosgriff

13

Dep. I at 66.)  Cosgriff submitted up to $1,200 a month to Valdese's controller for

reimbursements related to Valdese's use of the New York office.  (Cosgriff Dep. I at 119; Heller

Aff., Ex. J (Deposition of L. Snyder Garrison, Jr. dated September 15, 2010) at 139.)  When

Valdese ended its contract with Highland Fabrics, Cosgriff left the space and transferred the

lease to NMN Fabrics, which began to represent Valdese out of the same office.

      The fact that Valdese approved the New York office, that Valdese's personnel frequently

used the office, and that Valdese maintained control of the office after the Agreement was

terminated together establish Valdese's significant involvement in the location of Cosgriff's

work.  Nevertheless, Highland Fabrics was the leaseholder of the offices and paid the rent for the

office, and Cosgriff deducted those rent payments as a business expense on his taxes**.**  The fact

that Highland Fabrics was responsible for the lease and that no managers from Valdese worked

permanently out of the office provide support for the conclusion that Cosgriff was not an

employee under the direct supervision of Valdese, but rather was an independent contractor

representing them.

      5. Duration of the Relationship

      A relatively short tenure ordinarily implies that a worker is an independent contractor.

*Eisenberg*, 237 F.3d at 117.  Cosgriff worked with Valdese for seven years.  This factor weighs

in favor of Cosgriff's status as an employee.

      6. The Right to Assign Additional Projects

      An employer generally directs an employee as to which tasks to perform, while an

independent contractor is typically hired only for particular contracts and obligated to perform

only those tasks to which it has already agreed by contract.  *See Aymes*, 980 F.2d at 863; *Johnson*

*v. FedEx Home Delivery*, No. 04 CV 4935, 2011 WL 6153425 at *13 (E.D.N.Y. Dec. 12, 2011)

(Gleeson, J.).   Here, Cosgriff was not assigned work outside of the Agreement he signed with

Valdese.  Although Valdese did not assign additional projects to Cosgriff after signing the

Agreement with Highland Fabrics in 2001, there were not obvious additional projects that could

have been assigned, because Highland Fabrics already represented Valdese throughout the

Northeast.  The Court therefore finds this factor to be irrelevant

       7. Extent of the Hired Party's Discretion Over When and How Long to Work

       Cosgriff argues that Valdese dictated Cosgriff's daily schedule through phone calls,

including controlling the amount of time Cosgriff spent in the office and criticizing Cosgriff if he

had a doctor's appointment or had not arrived in the office by the time Valdese management

called.  (Pl.'s Opp'n at 7; Cosgriff Aff.  ¶ 8; *id*. at ¶ 10.)

       In his affidavit, Cosgriff makes the conclusory statement that "Valdese controlled the

amount of time I spent in the New York office."  (Cosgriff Aff. ¶ 10.)  However, in his

deposition, Cosgriff describes these calls differently.  Cosgriff says that the calls and messages

were "not saying, 'Where are you?  How come you're not here?' as much as saying, 'Hi. It's me.

I need to talk to you.  I need to see what you're planning because I want to come up and do

this.'"  (Cosgriff Dep. I at 139.)  Cosgriff's deposition testimony establishes that Cosgriff was in

frequent telephone contact with designers, employees, and managers at Valdese, but his

testimony contradicts his claim that the calls were made in order to control the hours Cosgriff

spent in the office.

       Cosgriff does state that "I would be told how much time I should be spending working.

If you took a vacation at a certain time it wasn't without criticism at times.  And there were some

heated arguments between Zack, Joe, myself and Neil of 'We are big guys and we can make our

own decision on how we're working and the results are showing.  We would take offense when

somebody would say you shouldn't take a long weekend." (*Id*. at 136.)  Similarly, here Cosgriff describes a situation in which Valdese asserted influence over how much time Cosgriff spent working but Cosgriff and his co-workers nevertheless were taking vacations when they wanted, even if they were criticized for it.

Cosgriff states that "[w]hen I was at Mastercraft I was independent and I was doing what I wanted to do.  And most of the time you did your scheduling and your amount of work days, your work hours was whatever you wanted.  When I joined Valdese it evolved that there was a little bit more control than I had previously experienced." (*Id*. at 90.)  He goes on to explain that "[t]here were more people from North Carolina coming to the office in New York. . . .  Just – 'Gee, you answered the phone.  How come you're not out on a sales call?'  'Gee, you took yesterday off to play golf.'  'I was with the customers.  I thought it was fairly important.'  And it was just a little bit more hands-on, telling us that it might not be a good idea to go on vacation at this time." (*Id*.)  " [A] little bit more control" and a relationship that "was just a little bit more hands-on" in the management of his time do not necessarily transform the nature of his employment from being an independent contractor to being an employee.  Cosgriff has not stated that he or Valdese recorded the hours or days he worked in any way, or that anyone recorded his sick days or vacation, and the amount of money Cosgriff receieved from Valdese had no relation to the amount of time he worked.  Although Cosgriff retained more independence in scheduling than a typical employee, he had less freedom than a typical independent contractor, and the Court thus finds this factor of indeterminate weight.

### 8. Method of Payment

Compensation primarily or exclusively on the basis of time worked (rather than projects completed or sales made) suggests that a worker is an employee.  *Eisenberg*, 237 F.3d at 119.  It

is undisputed that Valdese paid Highland Fabrics on the basis of commissions only.  Cosgriff

then distributed these payments from Highland Fabrics to himself, Nahoum, and Schneider

according to their partnership agreement.  No calculations of hours worked were submitted to

Valdese, and the payments to Highland Fabrics depended on the sales that were made.  This

factor supports the conclusion that Cosgriff was an independent contractor.

### 9. Hired Party's Role in Hiring and Paying Assistants

Cosgriff hired a number of people to work as independent contractors with Highland

Fabrics, both while representing Mastercraft and also while working with Valdese.  Before

Cosgriff had any relationship to Valdese, Cosgriff hired his daughter Stacy in 1996 or 1997 to

work with Highland Fabrics "as a representative to learn the textile business to represent

Mastercraft." (Cosgriff Dep. I at 32-33.)  She continued to work with Highland Fabrics until

2004, after it began representing Valdese.  (*Id*. at 33.)  Cosgriff had hired Nahoum as a sales

representative with Highland Fabrics in 1997, but Nahoum subsequently left to work for a

division of Mastercraft.  (*Id*. at 35.)  After Stacy Cosgriff left Highland Fabrics, Cosgriff hired

Nahoum again in 2005 to work representing Valdese. (*Id*. at 64-65.)  While working with

Valdese, Cosgriff also hired Schneider, whom he had interviewed previously when he had been

an independent contractor at Mastercraft.  (*Id*. at 111-12.)

Cosgriff also states in his affidavit that he "inherited a number of sales employees,"

specifically Jennifer White and Sarah Rosenbalm, who had worked in the New York showroom

previously.  (Cosgriff Aff. ¶ 30.)  White eventually moved to North Carolina and worked for

Valdese there.  Cosgriff decided to fire Rosenbalm, which he did after obtaining approval from

managers at Valdese.  (*Id*.)

With regard to Valdese's role in hiring, Cosgriff stated that, "[i]t was absolutely a mutual idea that we [hire] – I didn't hire or fire anybody without the okay of Valdese Weavers." (Cosgriff Dep. I at 94.)  The record indicates that Cosgriff had discretion to choose whether or not to add employees at Highland Fabrics and to choose whom to hire, but that Valdese retained the power to approve those who would work with Cosgriff to represent them.  The Court finds this factor to be of an indeterminate weight, not meaningfully cutting in favor of the conclusion that Cosgriff was an independent contractor or an employee.

### 10. Whether the Work Is Part of the Regular Business of the Hiring Party

"The purpose of this factor is to determine whether the hired party is performing tasks that directly relate to the objective of the hiring party's business." *Aymes*, 980 F.2d at 863. Valdese produces and sells fabrics and has individuals working in sales as employees and others as independent contractors.  The fact that Cosgriff is conducting work that directly relates to the objectives of Valdese's business and that Valdese engages salespeople as its own employees in North Carolina both support the proposition that Cosgriff was an employee.

### 11. Whether the Hiring Party Is in Business

This factor recognizes that if a hiring party is a corporation engaged in a business, as opposed to an individual, it is more likely that it would employ people. Valdese is indisputably in business and, as discussed above, Cosgriff's work directly furthered Valdese's regular business. This factor therefore weighs in favor of the conclusion that Cosgriff was an employee.

### 12. Provision of Employee Benefits

It is undisputed that Cosgriff paid for his own health and life insurance policies and contributed to his own retirement account without any contributions from Valdese.  (Cosgriff Dep. II at 128; Cosgriff Dep. I at 148.)  Cosgriff did not receive the benefits that Valdese's

employees receive.  This factor supports the proposition that Cosgriff was an independent contractor.

### 13. Tax Treatment of the Hired Party

Cosgriff presented himself to the Internal Revenue Service as an independent contractor. Cosgriff filed a corporate tax return for Highland Fabrics and deducted all of his business expenses, as well as his wife's expenses from Summa Interiors, as business expenses of Highland Fabrics, including all the costs of his car and the costs of both his and his wife's contributions to retirement accounts.  (Cosgriff. Dep. II at 128; *id*. at 133.)  Highland Fabrics paid Cosgriff and his wife each a salary, based not on the money that Cosgriff was paid by Valdese or the money his wife earned at Summa Interiors, but on their accountant's recommendations for minimizing their tax liability.  (*Id*. at 129-31.)  Highland Fabrics paid Nahoum, Schneider and others as its own independent contractors, deducting their payments on its corporate tax return.  (*Id*. at 134-35.)  This factor supports the conclusion that Cosgriff was an independent contractor.

## C.  Application of Law to the Facts – The Reid Factors Together

The Court disregards three of the *Reid* factors in this case, because the right to assign additional projects is irrelevant to Cosgriff's situation, and the hiring of assistants as well as the discretion over when and how long to work are both of an indeterminate weight.  Three of the *Reid* factors weigh in favor of Cosgriff's status as an employee: the seven year duration of his relationship with Valdese, as well as the facts that Valdese is in business and Cosgriff's work is part of Valdese's regular business.  The remaining seven *Reid* factors all weigh in favor of Cosgriff's status as an independent contractor: the control over the manner and means of his work, the skills required for his job, the sources of his instrumentalities and tools, the location of

his work, the method of his payment, the provision of employee benefits, and Cosgriff's tax status.

The Court places emphasis on whether or not Valdese had the right to control the manner and means through which Cosgriff accomplished his sales. *See Eisenberg*, 237 F.3d at 114. Valdese certainly had an interest in what Cosgriff was doing and how it affected the company, but their frequent suggestions and recommendations do not change the fact that Cosgriff used his own expertise and exercised his own discretion in generating sales. Cosgriff's control over his work is reinforced by the fact that he provided the majority of the tools that enabled him to make sales and that he worked out of an office that he had leased, with no Valdese managers permanently present there.

Cosgriff was a skilled professional paid by commission for sales. Prior to initiating his relationship with Valdese he had previously worked as an independent contractor and had formed his own corporation, which also included his wife's completely separate business. Although Valdese was involved in Cosgriff's sales representation, Cosgriff maintained substantial control over the manner in which he fulfilled his responsibilities under the Agreement. In light of the record as a whole, and drawing all reasonable inferences in Cosgriff's favor, the Court finds that no reasonable finder of fact could conclude that Cosgriff was a Valdese employee.

Because Cosgriff was an independent contractor and not an employee, he is not covered by the NYCHRL.

## C.  CONCLUSION

For the foregoing reasons, the Court GRANTS Valdese's motion for summary judgment.

The Clerk of Court is directed to close this case.  Any pending motions are moot.


SO ORDERED.

DATED:      New York, New York

March **30** , 2012

KIMBA M. WOOD
United States District Judge

21